UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVEN L. MARVIN,

        Plaintiff,

Case No. 1:15-cv-1310

Hon. Robert J. Jonker

v.

CAPITAL ONE,

        Defendant.

                                     /

**REPORT AND RECOMMENDATION**

*Pro se* plaintiff filed a complaint against defendant Capital One Bank (USA), N.A. (named in the complaint as "Capital One"). This matter is now before the Court on Capital One's motion to dismiss (docket no. 6).

**I.     Background**

This case involves a dispute arising out of plaintiff's use of a Capital One credit card ending in the number 7624. Compl.(docket no. 1, PageID.16); Letter (Nov. 4, 2015) (docket no. 1-1, PageID.21). Plaintiff apparently incurred a credit card debt in the amount of $5,754.24. Plaintiff's Fax (Sept. 30, 2015) (docket no. 1-1, PageID.43). Rather than pay the credit card debt with a check or money order, plaintiff issued defendant "two separate promissory notes." Compl. at PageID.2. After sending the first note, Capital One required plaintiff to send a second note along with his social security number, date of birth, and other specific data for submission to its fulfillment center for processing. *Id.* Sometime prior to September 30, 2105, plaintiff sent a second "promissory note" in the amount of $5,000.00, "with my wet signature on it along with my thumb print in red ink with

numerous legal citations quoted on the face of the promissory note." Plaintiff's Fax at PageID.43. Plaintiff's fax stated in part:

> The authority for the note was quoted to be public policy 73-10, 48 statues [sic] at large 112 and HR 192 of June 5, 1933. The CUSIP number was quoted and the receipt of the negotiable instrument should have "discharged" the credit card debt for a $5,000 reduction in debt.

*Id.* In a letter dated October 6, 2015, Capital One advised plaintiff that it would be happy to research his request but needed additional information, such as his current address. *See* Capital One Letter (Oct. 6, 2015) (docket no. 1-1, PageID.40). Ultimately, Capital One stated that it would not recognize it as payment. Compl. at PageID.2.

At some point prior to November 4, 2015, plaintiff contacted the Consumer Financial Protection Bureau with respect to his attempt to pay the credit card debt with a "negotiable international promissory note." *See* Capital One Letter (Nov. 4, 2015) (docket no. 1-1, PageID.21-23). In the November 4th letter, Capital One advised plaintiff as follows:

> We don't accept your negotiable international promissory note as an offset, payment, presentment or discharge of your debt. We only accept legal tender for payments on accounts. According to the terms of your Customer Agreement, all payments made by mail must be in the form of a check or money order, payable in United States (U.S.) funds and drawn on a financial institution located in the U.S.
>
> We have not received a valid form of payment for this account since July 8, 2015.
>
> We are not in default or dishonor to you as claimed in your negotiable international promissory note. The documents you sent contain inaccurate assertions attempting to void or eliminate a valid debt.

*Id.* at PageID.22.

Plaintiff alleged the Capital One wrongfully rejected his international promissory note and violated the "disclosure doctrine," i.e., "the statutes require full disclosure of the amount of

2

interest being charged, which Defendant Capital One did, and the difference between cash price and credit price, which Defendant did not." Compl. at PageID.12-13. Plaintiff alleged that Capital One's actions in lending him money damaged him by creating a "debt servitude" and relegating him to the "status of peonage" stating in pertinent part:

> As of the October 25, 2015 statement the Plaintiff is allegedly to pay out $108.32 in fees and interest. The Defendant creates money out of thin air and burdens the Plaintiff as though he is a debt slave. The alleged $5,800.00 plus debt could take years for the Plaintiff to pay off.
>
> The manner by which the Defendant Capital One transacts business has made the Plaintiff their debt slave.
>
> \* \* \*
>
> The transaction methodology of the account manger(s) involved instructing the Plaintiff whether aware of it or not, were commencing debt servitude under 'their' species of payment therein commencing a status of peonage as against the Plaintiff.
>
> \* \* \*
>
> In the past, the Plaintiff made periodic alleged payments with actual "Dollars", "Federal Reserve Notes", Medium(s) of Exchange and or "Legal Tender" that was earned, through the fruits of his labors. These actual periodic payments made to Defendant Capital One were for "money" Defendant Capital One created out of thin air.

*Id*. at 11-13. Finally, plaintiff alleged that Capital One reported this as a disputed debt to Equifax. *Id.* at PageID.7-8. *See* Capital One Letter (Nov. 4, 2015) ("On November 3, 2015, we requested that the Consumer Reporting Agencies report your account as being disputed by you . . . Please allow up to 60 days for these agencies to update their records.").

While plaintiff contends that this Court has jurisdiction over this action pursuant to the Truth in Lending Act, 15 U.S.C. § 1601 *et seq*. ("TILA"), he has not alleged the violation of any particular section of TILA. *Id.* at PageID.8-9. The only conceivable claim against Capital One

3

would arise under 15 U.S.C. § 1637(a) ("Required disclosures by creditor"), based on plaintiff's contention that the bank failed to make a disclosure, i.e. that the bank "had a duty to provide full disclosure of the fact that Capital One had no money to credit the Plaintiff until the Plaintiff signed the credit application." Compl. at PageID.13.[1] This appears to be plaintiff's First Claim for Relief, in which he alleged that Capital violated a duty to disclose, stating in pertinent part that:

> The defendant Capital One breached the duty to provide full disclosure of the fact that Capital One had no money to credit the Plaintiff until the Plaintiff signed the credit application. At that point the money was created out of thin air, by the Plaintiffs promise to pay.

*Id.* at PageID.13.

In his Second Claim for Relief, plaintiff alleged that Capital One engaged in "actual fraud", stating in pertinent part that:

> Upon information and belief, Defendant Capital One knew that it was merely making an electronic bookkeeping entry, and creating money out of thin air prior to entering into the credit agreement with the Plaintiff.
>
> That concealment of the creation of 'money' by an electronic bookkeeping entry was latent and not reasonably identifiable and ascertainable by the Plaintiff. The Defendant misrepresented their authority by implementing alleged Agreement(s) that bypass federal law(s) and Board of Governers of the Federal Reserve policies on discharge/payment method(s) approved in the Uniform Commercial Code.

*Id.* at PageID.14.

In his Third Claim for Relief plaintiff alleged that:

> The Defendant committed slander of credit willfully as against the Plaintiff, when it instructed the Plaintiff to send a second promissory note, with additional data

---

[1] Plaintiff also makes a cursory reference to a Thirteenth Amendment violation involving "involuntary servitude," "debt slavery," and "peonage." *See* Compl. at PageID.11, 15. However, he does not set forth any coherent cause of action under the Constitution. *See* U.S. Const. Amend. XIII ("Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction.").

>   on it; to later decide they could not accept that "note", Id. as a form of payment either.

*Id.*

Finally, in his Fourth Claim for Relief, plaintiff alleged that:

>   The Defendant knew or should have known that Equifax is a data controller and by the Defendant not sending accurate data, such as original promissory note(s) information, evidence, and related data, in accurate form(s), the Defendant committed defamation against the Plaintiff.

*Id.* at PageID.14.

For his relief, plaintiff wants a judgment against Capital One to produce certain items related to discovery, alternative relief that it "clear the alleged debt the Plaintiff has with Capital One regarding credit card ending in #7624", that it pay plaintiff treble damages for violating TILA, and that it pay *pro se* plaintiff's attorney fees. *Id.* at PageID.16.

### II.     Defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)

Capital One brings its motion pursuant to Fed. R. Civ. P. 12(b)(6), which seeks dismissal for failure to state a claim upon which relief can be granted.

>   To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). In making this determination, the complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. *Morgan v. Churchs Fried Chicken*, 829 F.2d 10, 12

(6th Cir. 1987). "*Pro se* complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (internal quotation marks omitted). However, this liberal construction does not require the Court "to conjure up unpled allegations." *Dietz v. Sanders*, 100 Fed. Appx. 334, 338 (6th Cir. 2004). Nor can a court rewrite a complaint to include claims that were never presented. *Rogers v. Detroit Police Deptartment*, 595 F. Supp.2d 757, 766 (E.D. Mich. 2009). To hold otherwise would require the court to explore all potential claims of a *pro se* plaintiff and transform the district court to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party. *Id.*

Finally, "[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. National Collegiate Athletic Association*, 528 F.3d 426, 430 (6th Cir. 2008).

**III.    Discussion**

The alleged transactions in this lawsuit are not complicated. Plaintiff incurred debt on a Capital One credit card. He paid past credit card bills in "dollars." Instead of continuing to pay his credit card bill in "dollars," plaintiff sent Capital One a piece of paper which he called an international promissory note. When Capital One rejected this paper as payment, plaintiff filed this federal lawsuit demanding relief against Capital One. In his response to the motion for summary judgment, plaintiff attempts to justify his use of the "international promissory note" sent to Capital One, referring to the following statement set forth at the bottom of the second note:

6

> In as much as no lawful money of account exists in circulation, and pursuant to current "UNCITRAL CONVENTION", STEVEN LEE MARVIN © TRUST has no money with which to pay a debt. Because STEVEN LEE MARVIN © TRUST has no money with which to pay a debt, he has had to resort to tendering this negotiable instrument, pursuant to the UNCITRAL CONVENTION Articles 1-7, Articles 11, 12, 13, 14(1), Articles 46(3) and Articles 47-4(c). (ref) 24 CFR 115.201(a).

Plaintiff's Response (docket no. 15, PageID.95).

The gist of plaintiff's argument is that there is no lawful money in circulation, that his personal international promissory note was authorized under the "UNCITRAL CONVENTION," and that Capital One violated federal and state law by refusing to accept it. This is nonsense. "UNCITRAL is the United Nations Commission on International Trade Law. Established by the United Nations General Assembly in 1966, UNCITRAL plays an important role in developing and improving a legal framework to facilitate international trade and investment." *BP Exploration Libya Limited v. ExxonMobil Libya Limited*, 689 F.3d 481, 485, n. 1 (5th Cir. 2012). Plaintiff cannot pay his debt owed to Capital One by use of a purported "international promissory note" authorized under the UNCITRAL convention because such a note is not legal tender. *In re Walters*, No. 14-10119 (SMB), 2015 WL 3935237 at *3 (Bankr. S.D.N.Y. June 25, 2015), citing *Blocker v. U.S. Bank, N.A.*, 993 N.E.2d 1154, 115758 (Ind. Ct. App.2013) (rejecting mortgagors' effort to discharge mortgage through delivery of an International Promissory Note drawn on the U.S. Treasury). *See Chopin v. Green Tree Servicing, LLC*, No. CV 15-1918, 2016 WL 1244515 at *2 (E.D. La. March 30, 2016) (courts throughout the country have held that international promissory notes are not legal tender, "rejecting conspiracy theories that similarly argue [international promissory notes] and bills of exchange may discharge a mortgage or other debts").

Plaintiff's lawsuit is based upon a "vapor money" theory which has been routinely rejected by the courts. As one court explained:

> [T]he "vapor money," "unlawful money" or "redemption" theories of debt . . . are all, in essence, based on the premise that "because the United States went off the gold standard in 1933 with the passage of HJR-192, 'the United States has been bankrupt and lenders have been creating unenforceable debts because they are lending credit rather than legal tender.'"

*Green v. Pryce*, No. 15-CV-3527 MKB, 2015 WL 4069176 at *2 (E.D.N.Y. July 1, 2015). *See, e.g.*, *Brook v. Woodall*, 257 P.3d 456, 457 (Utah Ct. App. 2011) ("[w]ith these strange and vague allegations, [the *pro se* plaintiffs] appear to be attempting to plead the theory known in the credit industry as a 'vapor money' or 'no money lent' theory, which is commonly pleaded in an effort to avoid legitimate debts").

In *Demmler v. Bank One NA*, No. 2:05-CV-322, 2006 WL 640499 (S.D. Ohio March 9, 2006), the court addressed the "utterly frivolous" nature of similar claims asserted by the plaintiff who sought to avoid paying back a $350,000.00 mortgage loan:

> In this case, even taking Plaintiff's *pro se* status into account, the Court concludes that the complaint is utterly frivolous and lacks any legal foundation whatsoever. It would be a further waste of judicial resources to delve into the voluminous allegations contained in Plaintiff's twenty-one count complaint. Suffice it to say that all of Plaintiff's claims, federal and state, stem from the same basic premise. Plaintiff alleges that the promissory note he executed is the equivalent of "money" that he gave to the bank. He contends that Bank One took his "money," i.e., the promissory note, deposited it into its own account without his permission, listed it as an "asset" on its ledger entries, and then essentially lent his own money back to him. He contends that Bank One did not actually have the funds available to lend to him, but instead "created" the money through its bookkeeping procedures. He further argues that because Bank One was never at risk, and provided no consideration, the promissory note is *void ab initio*, and Defendants' attempts to foreclose on the mortgage are therefore unlawful.
>
> Plaintiff offers no authority for this patently ludicrous argument. Similar arguments have been rejected by federal courts across the country. *See Frances*

8

>   *Kenny Family Trust v. World Savings Bank*, No. C04-03724 WHA, 2005 WL 106792 (N.D. Cal. Jan.19, 2005)(sanctioning plaintiffs and rejecting their "vapor money" theory); *Carrington v. Federal Nat'l Mortgage Ass'n*, No. 05-cv-73429-DT, 2005 WL 3216226, at *3 (E.D. Mich. Nov.29, 2005) (finding "fundamentally absurd and obviously frivolous" plaintiff's claim that the lender unlawfully "created money" through its ledger entries); *United States v. Schiefen*, 926 F.Supp. 877, 880-81 (D.S.D.1995)(rejecting arguments that there was insufficient consideration to secure the promissory note, and that lender had "created money" by means of a bookkeeping entry); *Thiel v. First Fed. Savings & Loan Ass'n of Marion*, 646 F.Supp. 592 (N.D. Ind.1986)(rejecting claims that lender had violated RICO and the National Bank Act by issuing loan check in exchange for promissory note, and imposing sanctions on plaintiffs for bringing frivolous action); *Rene v. Citibank*, 32 F.Supp.2d 539, 544-45 (E.D.N.Y.1999)(rejecting claims that because lender did not have sufficient funds in its vault to make the loan, and merely "transferred some book entries," the lender had created illegal tender).

*Demmler*, 2006 WL 640499 at *3-4.

Plaintiff's claims reek of tax protester or so-called sovereign citizen theory. Lawsuits such as plaintiff's, which seek to avoid debts because the creditor had no money to lend, have been found to be brought in bad faith and sanctionable. As the court observed in *Nixon v. Individual Head of St. Joseph Mortgage Co.*, 615 F. Supp. 898 (N.D. Ind. 1985), *affirmed* 792 F.2d 142 (7th Cir. 1986):

>   Finally, this lawsuit smacks of bad faith on the part of the plaintiff. Nixon obtained the check in September, 1981 and used it to purchase his residence. In late 1984, after the Mortgage Company begins proceedings to foreclose the mortgage, Nixon suddenly files this suit seeking in effect to have the loan with which he obtained his residence declared illegal so as to back out of his contractual promise to pay on the loan. He has enjoyed the fruits of what the Mortgage Company's check bought, yet seeks to nullify that check on the basis of an absurd view that bank or mortgage company checks are worthless attempts to create "illegal tender." Nixon's own experience in getting a residence with the check indicates that the market place recognizes the value of "credit and checkbook money," so that Nixon has suffered no damages and has no valid calim [claim] to advance here.
>
>   In Nixon's other two cases, *Nixon v. The Individual Head of the St. Joseph Mortgage Co.*, 612 F.Supp. 253 (N. Ind. 1985), and *Nixon v. Phillipoff*, 615 F.Supp. 890 (N. Ind.1985) this court found Nixon's claims frivolous and deserving of

9

> sanctions under Rule 11 of the Federal Rules of Civil Procedure. This case warrants such sanctions as well, especially in light of the fact that Nixon used the allegedly worthless check to buy his home. Given the fact that this suit was filed near the time that the Mortgage Company began foreclosure proceedings against Nixon, there is also an element of attempting to harass these defendants through the filing of dilatory and groundless lawsuits, a practice which the Seventh Circuit has found worthy of the imposition of sanctions. *Glick v. Koenig*, 766 F.2d 265, 270 (7th Cir.1985).

*Nixon*, 615 F. Supp. at 900-01.

Plaintiff's cryptic TILA disclosure claim, as well as his state law claims for fraud, slander of credit and defamation are frivolous. They all arise from the groundless legal theories (1) that Capital One did not lend plaintiff money but created it "out of thin air," and (2) that Capital One refused to accept plaintiff's worthless international promissory note to pay his credit card bill. For these reasons, plaintiff's allegations fail "[to] state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. Accordingly, his complaint should be dismissed.

### IV. Recommendation

For the reasons set forth above, I respectfully recommend that defendant's motion to dismiss (docket no. 6) be **GRANTED** and that this matter be **DISMISSED**.

Dated: August 16, 2016
/s/ Ray Kent
RAY KENT
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).